CV-08 0238

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y

★  |JAN 16 2008|  ★

LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------------X

GUADALUPE BOSCH,

                              Plaintiff,

        -against-

DOMENICO LAMATTINA;
YOUNG & YOUNG, LLP;
 THOMAS J. BAILEY, ESQ.;
 JOSEPH A. SCHUBIN &
ASSOCIATES; and FREEDOM MORTGAGE
CORPORATION,

                              Defendants.

-----------------------------------------------------------------X

**COMPLAINT and
DEMAND FOR JURY TRIAL**

Civil Action No. SEYBERT, J.

        TOMLINSON, M

**JURY TRIAL DEMANDED**

        GUADALUPE BOSCH, by her attorneys FLOWER, MEDALIE &

MARKOWITZ, as and for her complaint against defendants, based upon personal

knowledge with respect to herself and upon information and belief with respect to all

other matters, alleges as follows:

## JURISDICTION

1.        The jurisdiction of the Court over this controversy is based upon a federal

        question arising under 12 U.S.C. § 2607.  Therefore, pursuant to 28 U.S.C.

        §1331, the federal court has jurisdiction over this matter.

## VENUE

2.        The unlawful actions alleged below were committed within the County of

        Suffolk, State of New York.

3.      Plaintiff Guadalupe Bosch, (hereinafter "plaintiff") is a resident of the County of Suffolk, State of New York.

4.      Upon information and belief, defendant Domenico LaMattina (hereinafter "defendant LaMattina") resides in Suffolk County, New York.

5.      Upon information and belief, defendant Young & Young, LLP (hereinafter "defendant Young") are attorneys, licensed to practice law in New York, with an office in Suffolk County, New York.

6.      Upon information and belief, defendant Thomas J. Bailey, Esq. (hereinafter "defendant Bailey") is an attorney licensed to practice law in New York, with an office in Nassau County, New York.

7.      Upon information and belief, defendant Joseph A. Schubin & Associates (hereinafter "settlement agent") are attorneys licensed to practice law in the State of New York.

8.      Upon information and belief, defendant Freedom Mortgage Corporation (hereinafter "defendant mortgage corporation") is a foreign corporation licensed to do business in New York and has entered into contracts to do business in Suffolk County.

9.      The real property at issue is located in Suffolk County, New York.

10.      The closing and sale of the real property at issue occurred in Suffolk County, New York.

11.     This Court in the Eastern District of the State of New York is hereby the
proper venue under 28 U.S.C. § 1391(b).

## THE PARTIES AND THE MORTGAGE RESCUE PLAN

12.     Prior to November 2, 2006, plaintiff was the fee simple owner of a residence
located at 105 Barber Street, Brentwood, New York, District 500, Section
139, Block 2, Lot 74 (hereinafter "the real property" or "plaintiff's home"),
which was subject to a mortgage in favor of Countrywide Home Loans. The
residence was plaintiff's home.

13.     In early 2007, plaintiff was laid off from her position as a medical assistant
and remained unemployed until October 2007. On or about July 2007,
plaintiff fell two to three months behind on her mortgage payments due to her
unemployment. Because she was unemployed, she was unable to refinance
her home and take some equity out of her property to assist her in making the
mortgage payments until she obtained employment.

14.     In approximately September 2007, defendant LaMattina approached plaintiff,
offering to assist her in becoming current on her mortgage.

15.     Defendant LaMattina informed plaintiff that he would obtain a mortgage on
the property and pay off plaintiff's current mortgage, including the arrears.
Defendant LaMattina informed plaintiff that she would be able to live in the
home, and for two years pay him $3,500 a month to cover the mortgages and

3

taxes. Defendant LaMattina stated he would pay the mortgages and real estate taxes on the property.

16.   Defendant LaMattina informed plaintiff that she then would have two years to resurrect her credit and obtain a mortgage in her own name.

### THE "CLOSING"

17.   Defendant LaMattina arranged to meet plaintiff on November 2, 2006 at the law office of defendant Young, located at 863 Islip Avenue, Central Islip, New York.

18.   At this meeting, plaintiff learned for the first time that, under the defendants' plan for her and her property, she was to sell her home to defendant LaMattina and would have to transfer title of her home to him.

19.   The November 2, 2006 meeting thus turned out to be a closing on the sale of plaintiff's property to defendant LaMattina (hereinafter "closing").

20.   Upon information and belief, defendant LaMattina arranged to have defendant Bailey, an attorney, appear at the meeting on November 2, 2006, to represent plaintiff as the "seller". Prior to  November 2, 2006, plaintiff had never met defendant Bailey, nor had she ever communicated with him.

21.   Defendant Young is an attorney who represented defendant LaMattina as the "buyer" of plaintiff's real property.

22.   Defendant Joseph A. Schubin & Associates acted as the settlement agent at the closing, and appeared at that time by attorney Jeffrey Liew.

4

23.     Upon information and belief, defendant Freedom Mortgage acted as a mortgage broker for defendant LaMattina and assisted him in obtaining two loans for the purchase of plaintiff's real property.

24.     The title company, Faith Abstract, was represented by the title closer, Kathleen Miraglia.

25.     At the closing, plaintiff was given and signed many documents she was shown for the first time, including a residential contract for the sale of the property and option agreement.

26.     As a result of the documents presented to and signed by plaintiff on November 2, 2006, defendant LaMattina purchased plaintiff's residence for $440,000.  The outstanding mortgage debt owed on the property by plaintiff was $369,129.23.  Therefore, plaintiff had $70,870.77 equity in the property.

27.     Plaintiff left the closing with zero dollars, in that her said equity was improperly paid to and received by one or more of the defendants.

28.     Upon information and belief, defendant Freedom Mortgage assisted defendant LaMattina in obtaining two mortgages from NLC of NYC, Inc. to purchase the property.

29.     At the closing, defendant LaMattina took a first mortgage on the property for $352,000.00, and a second mortgage for $88,000.00.

30.   Unbeknownst to plaintiff, at the closing, defendant LaMattina was given an undisclosed credit on the $440,000.00 sales price.   Plaintiff did not agree to any such credit.

## THE HUD-1 UNIFORM SETTLEMENT STATEMENTS WERE FRAUDULENTLY PREPARED

31.   According to the HUD-1 Uniform Settlement Statements prepared by defendant Schubin, the settlement agent, there was $432,983.82 to be disbursed from the proceeds of the "sale".

32.   According to the HUD-1 Uniform Settlement Statements, the defendant LaMattina was to pay the following settlement charges, including but not limited to the bank attorney's fees and costs; the title insurance charges; the recording fees for the two mortgages, the title closer's costs, prospective real estate taxes; interest from 11/03/06 – 12/1/06; the loan origination and processing fees to NLC of NYC Inc.; totaling $15,750.33.   These settlement charges, according to the HUD-1 Uniform Settlement Statement, were to be paid in cash by the buyer, defendant LaMattina.   Copies of the HUD-1 Uniform Settlement Statements are collectively attached hereto as EXHIBIT "A".

33.   Also according to the HUD-1 Uniform Settlement Statements, plaintiff Bosch was to receive $68,810.77 in cash from the sale.   Plaintiff received $0 from the sale.

34.   The settlement agent, Jeffrey Liew (on behalf of defendant Schubin) signed the Certification Addendum to HUD-1 Settlement Statement, and stated "The HUD-1 Settlement Statement which I have prepared is a true and accurate account of this transaction.  I have caused or will cause the funds to be disbursed in accordance with this statement."

35.   Defendant LaMattina signed the same Certification Addendum to HUD-1 Settlement Statement, and stated, "I have carefully reviewed the HUD-1 settlement statement and to the best of my knowledge and belief, it is a true and accurate statement of all receipts and disbursements made on my account or by me in this transaction."

36.   However, according to the mortgage disbursement schedule of checks issued by defendant Schubin, plaintiff Bosch paid for all of defendant LaMattina's closing costs, including but not limited to $2,500 to defendant Young (the buyer's attorney); $2,500 to defendant Bailey (the seller's attorney); $13,102.29 to Faith Abstracts (title company); and $425 to Kathleen Miraglia (the title closer).  An additional $21,000 was placed in defendant Young's escrow account.  Finally, a check for $24,277.30 was written to defendant LaMattina from plaintiff Bosch's proceeds.

37.   Prior to the closing, plaintiff Bosch was not informed that she was obligated to pay for the buyer's settlement charges (and in fact, she was not obligated), including but not limited to his title costs, loan charges, attorney's fees, as

well as the title closer's fees.  Neither was she informed that $24,277.30 of her equity would be given to defendant LaMattina.

38.     Plaintiff was, at a minimum, entitled to those funds, and was entitled to rely upon them to assist her in obtaining financing to repurchase her home within two years from the date of transfer to LaMattina.

39.     As a result of defendants' actions, plaintiff lost ownership of her home.

**IMPLEMENTATION OF THE LEASE-BACK AND OPTION AGREEMENT**

40.     At the closing, plaintiff also entered into a lease-back agreement with plaintiff under which plaintiff had the option to repurchase her home within two years at the same price defendant LaMattina purchased it for.

41.     At the closing, plaintiff was told that $21,000.00 of the funds from the "sale" would be placed in escrow with defendant Young, LaMattina's attorney. Pursuant to the lease-back option agreement signed by plaintiff and defendant LaMattina, plaintiff would lease back the residence for two years.

42.     Under the option agreement, defendant LaMattina was to pay the mortgages and real property taxes from the funds held in escrow by defendant Young and from the $1,750.00 a month paid to him by plaintiff in the form of rent.

43.     Defendants LaMattina and/or Young have not paid the real property taxes on the property since before May 2007 to the present.  There is currently a lien on the property as a result of the delinquent taxes.

44.   Additionally, on or about January 13, 2008, defendant LaMattina began

attempting to wrongfully evict plaintiff from the property.

## FIRST CAUSE OF ACTION

### (Violation of RESPA against LaMattina, Freedom Mortgage, Schubin, Young and Bailey)

45.   Plaintiff hereby re-alleges all foregoing paragraphs and incorporates them by

reference.

46.   Upon information and belief, the two mortgages brokered by defendant

Freedom Mortgage that are the subject of this action are "federally related

mortgage loans" within the meaning of the Real Estate Settlement Procedures

Act ("RESPA"), 12 U.S.C. § 2602(a).

47.   Upon information and belief, defendants LaMattina, Freedom Mortgage,

Schubin, Young and Bailey violated the rights of plaintiff under RESPA, 12

U.S.C. § 2601 *et seq.*, by:

    a.   By preparing, completing, adopting, approving, distributing, and/or

       signing a HUD-1 Settlement Statement that contained false or

       fraudulent information, in violation of 12 U.S.C. section 2603 (b);

    b.   conspiring to and paying fees, kickbacks or other things of value to

       each other pursuant to an agreement or understanding that business

       incident to or part of the real estate settlement services would be

       referred to each other, as prohibited by 12 U.S.C. § 2607 and 24

       C.F.R. § 3500.14(c);

      c.  conspiring to and giving a portion, split or percentage of charges made or received for the rendering of the real estate settlement service in connection with the transaction other than for services actually performed, as prohibited by 12 U.S.C. § 2607(a) and 24 C.F.R. § 3500.14(c).

48.    As a result of defendants' violation of RESPA, plaintiff is entitled to treble damages of not less than $350,000 and attorney's fees and costs.

## SECOND CAUSE OF ACTION

### (Fraud against LaMattina, Schubin, Young and Bailey )

49.    Plaintiff hereby re-alleges all foregoing paragraphs and incorporates them by reference.

50.    Upon information and belief, defendants LaMattina, Young, Bailey, and Schubin, and their agents, jointly and severally conspired to and unlawfully, knowingly, wrongfully, and intentionally did enter into a scheme to defraud plaintiff out of the equity in her home and the ownership of her home.

51.    Defendant LaMattina told plaintiff that he would obtain a mortgage on the home, pay off her existing mortgage, and then lease the premises back to plaintiff for two years, giving her time to clean up her credit and obtain a mortgage on her own.

52.    Defendants LaMattina and Bailey informed plaintiff that $21,000.00 of the proceeds to which plaintiff was entitled from the transfer of her home would

be kept in escrow by defendant Young. These defendants represented to plaintiff that they would apply $1,750.00 a month from this $21,000.00 towards the mortgage and real property taxes on the property.

53.   Defendant LaMattina also agreed to pay the two mortgages on the property from the $21,000.00 escrow fund and the $1,750.00 a month he received from plaintiff.

54.   At the time these statements and representations were made, defendants knew or should have known that they were false.

55.   Plaintiff relied upon these statements and representations when she executed the documents on November 2, 2006.

56.   Further, defendant Schubin prepared false and fraudulent HUD-1 Settlement Statements, which defendants LaMattina and Schubin's agent signed, and which Young and Bailey adopted and to which they did not object.

57.   Contrary to the HUD-1 Settlement Statement, defendants LaMattina, Young, Bailey, Schubin and their agents, permitted checks to be written from plaintiff's proceeds for expenses or items for which plaintiff should not have been liable and did not agree to pay. Copies of the "checklist" signed at closing and copies of checks issued at closing are annexed hereto, respectively, as Exhibits "B" and "C".

58.   Plaintiff suffered serious financial injury as the proximate result of her reliance on such intentional misrepresentations and omissions.

11

59.     Defendants' fraud is aimed at the public generally, is gross and involved a

high degree of moral culpability, entitling plaintiff to compensatory damages

of not less than five-hundred thousand dollars ($500,000), in an amount to be

determined at trial, and punitive damages of two-million dollars

($2,000,000.00), and reasonable attorney's fees and costs.

### THIRD CAUSE OF ACTION

**(Deceptive Trade Practices against Freedom Mortgage, Schubin, Young and Bailey)**

60.     Plaintiff hereby re-alleges all foregoing paragraphs and incorporates them by
reference.

61.     As described above, defendant Freedom Mortgage conducted a business
and/or furnished a service as those terms are defined in New York State
General Business Law § 349 ("Deceptive Practices Act").

62.     As described above, defendant Schubin conducted a business and/or furnished
a service as those terms are defined in New York State General Business Law
§ 349 ("Deceptive Practices Act").

63.     As described above, defendant Young conducted a business and/or furnished a
service as those terms are defined in New York State General Business Law §
349 ("Deceptive Practices Act").

64.     As described above, defendant Bailey conducted a business and/or furnished a service as those terms are defined in New York State General Business Law § 349 ("Deceptive Practices Act").

65.     All such defendants engaged in deceptive acts and practices in the conduct of their business during the closing and sale of plaintiff's home to defendant LaMattina. Said acts and practices were misleading in a material way, unfair, deceptive, and contrary to public policy and generally recognized standards of business, including but not limited to:

      a.  preparing, completing, adopting, approving, distributing, and/or signing a false and fraudulent HUD-1 Settlement Statement and "checklist";

      b.  permitting checks to be disbursed from the settlement proceeds contrary to the HUD-1 Settlement Statement;

      c.  misrepresenting to plaintiff the terms of the agreements;

      d.  misrepresenting to plaintiff what costs she was obligated and not obligated to pay;

      e.  permitting plaintiff's funds to be paid to persons not entitled thereto , including defendant LaMattina;

      f.  permitting a fraudulent or phony credit(s) to be given to defendant LaMattina towards the purchase price;

g.  failing to disclose to plaintiff conflicts of interest between the
    defendants.

66.  Defendants' practices have had and may continue to have a broad impact on
     consumers throughout New York State.

67.  As a result of each of defendants' conduct, plaintiff has been injured by such
     deceptive practices and is entitled to actual and statutory damages against
     each defendant.

68.  Defendants knowingly and willfully violated Gen. Bus. L. § 349, entitling
     plaintiff to attorney's fees and costs from defendants.

### FOURTH CAUSE OF ACTION

### (Breach of Contract against LaMattina)

69.  Plaintiff hereby re-alleges all foregoing paragraphs and incorporates them by
     reference.

70.  Defendant LaMattina and plaintiff entered into a contract for sale of plaintiff's
     residence and a lease-back agreement with an option for plaintiff to
     repurchase the residence within two years.

71.  Plaintiff informed defendant LaMattina that it was her intention to exercise
     her option to repurchase the residence within the two years.

72.  Under the contract for sale of the residence, plaintiff was to receive the equity
     from the sale of the home.

14

73.    By wrongfully taking plaintiff's equity from the sale of her home for his own

benefit, LaMattina has breached the contract for the sale of the residence by

receiving more than he was entitled to.

74.    Further, under the option agreement, defendant LaMattina was to pay the real

property taxes on the property and the mortgages.  He has failed to do so.

75.    Defendant LaMattina, on or about January 12, 2008, in violation of the option

agreement, has taken steps to wrongfully evict plaintiff from the residence.

76.    As a result of said breaches of the contract for sale of residence and the option

agreement, plaintiff has been damaged in an amount to be determined at trial,

but not less than five-hundred thousand dollars ($500,000.00).

### FIFTH CAUSE OF ACTION

### (Conversion against LaMattina)

77.    Plaintiff hereby re-alleges all foregoing paragraphs and incorporates them by

reference.

78.    Upon information and belief, defendant LaMattina converted plaintiff's funds

to his benefit.

79.    On November 2, 2006, $24,277.30 was wrongfully taken from plaintiff's

equity and given by check to defendant LaMattina.

80.    On November 2, 2006, $21,000.00 was taken from plaintiff's equity and given

to defendant Young for placement in his escrow account.

81.     The $21,000.00 was to be applied at the rate of $1,750.00 per month to pay the mortgages and real property taxes on the property during the following year while plaintiff lived in the residence and repaired her credit.

82.     Additionally, plaintiff paid defendant LaMattina $1,750.00 every month from November 2006 through November 2007 as rent, which was to be applied to the payment of the mortgages and/or real property taxes on the property.

83.     Upon information and belief, defendant LaMattina has failed to apply the $21,000.00 and plaintiff's $1,750.00 monthly payments to the real property taxes and mortgages.

84.     Upon information and belief, by taking the $21,000.00 at the closing, and the additional $1,750.00 monthly, and not applying said funds to the mortgages and real property taxes, defendant LaMattina has converted said funds to his own use.

85.     Plaintiff is entitled to the immediate possession therefore of the $24,277.30 payment made to and received by defendant LaMattina, the $21,000.00 purportedly held in escrow by defendant Young, and the twelve $1,750.00 monthly payments (totaling $21,000.00) made by plaintiff to defendant LaMattina.

86.     Upon information and belief, the funds taken by defendants LaMattina and Young can be directly traced to the $24,277.30 check written to defendant LaMattina at the closing, the $21,000.00 check written to defendant Young at

the closing, and the other twelve monthly payments in the amount of

$1,750.00 each which were delivered to defendant LaMattina by plaintiff.

87.     By reason of the above, plaintiff has sustained damages to be determined at

trial, but not less than  $75,000.00 plus interest from the date of conversion to

the present.

### SIXTH CAUSE OF ACTION

#### (Malpractice against Bailey)

88.     Plaintiff hereby re-alleges all foregoing paragraphs and incorporates them by

reference.

89.     Defendant Bailey acted as plaintiff's attorney during the closing.

90.     Defendant Bailey had a duty to use reasonable care when acting as plaintiff's

attorney during the "sale" and "closing."  He breached this duty by:

    a.    failing  to protect plaintiff from having to pay settlement costs that

          she was not obligated to pay;

    b.    failing to advise plaintiff  that she was not obligated to pay

          defendant LaMattina's attorney's fees, title costs, and the title

          closer's charges;

    c.    failing to advise plaintiff that she was not obligated to pay

          defendant LaMattina $24,277.30, nor give him a false and phony

          credit(s) towards the purchase price. A copy of Defendant Bailey's

17

handwritten memo to Plaintiff showing such credit(s) or

adjustments is annexed hereto as Exhibit "D";

d.  failing to advise plaintiff of the hazards and risks related to the

transaction, and allowing plaintiff to be taken advantage of and

deprived of her equity in the property;

e.  permitting plaintiff to enter into the "sale" of her home and not

receive any of the funds from the sale of the home;

f.  permitting plaintiff to enter into an lease-back and option

agreement that was unfair, unreasonable, unconscionable and

unworkable;

g.  failing to advise plaintiff sufficiently to protect her investment in

her home;

h.  failing to disclose the terms of the sale and option agreement to

plaintiff, and the consequences and potential consequence thereof

upon her and her interest in the subject property;

i.  permitting a false and fraudulent HUD-1 Settlement Statement and

"checklist" to be prepared , completed,  adopted, approved,

distributed, and/or signed;

j.  failing to properly explain to plaintiff the terms of the sale and

option agreement and the impact and consequences thereof upon

her and her interest in the subject property;

    k.   failing to adequately represent plaintiff's interests by allowing her to enter into a clearly unfavorable sale and option agreement whereby she lost all of the equity in her home, as well as ownership of her home.

91.    Defendant Bailey was negligent, careless, and reckless in the course of his representation of plaintiff.

92.    Defendant Bailey encouraged plaintiff to rely upon him in disregard of her best interests, thereby causing her to enter into an unfavorable sale and option agreement to her detriment.

93.    It was foreseeable that plaintiff would be damaged and/or that she would lose the equity in her home and that plaintiff would not be able to repurchase the home.

94.    Rather than prevent plaintiff from being taken advantage of, defendant Bailey conspired with the other defendants to defraud plaintiff, strip her of the equity in her home and ownership of her home.

95.    Defendant Bailey's representation fell below the ordinary and reasonable skill and knowledge commonly possessed by members of the legal profession.

96.    Upon information and belief, as a result of the actions of defendant Bailey, the plaintiff has sustained and will continue to sustain substantial damage, in that

she has been defrauded out of more than $70,000.00 of the equity in her home, and stripped of the ownership of her home.

97.    The malpractice of defendant Bailey was a proximate cause of the damages sustained by plaintiff.

98.    But for the negligence and malpractice of defendant Bailey, the plaintiff would have received in excess of $70,000.00 from the proceeds from the sale of her home.

99.    But for the negligence and malpractice of defendant Bailey, the plaintiff would still own her home or be in a position to repurchase it.

100.   But for the negligence and malpractice of defendant Bailey, the plaintiff would not have lost her home.

101.   Additionally, defendant Bailey accepted a $2,500 fee for his legal services. This amount far exceeds the amount attorneys typically receive for services provided in connection with the sale of a residence.

102.   Defendant Bailey colluded with the other defendants, with the intent to deceive his client.

103.   As a result of defendant Bailey's negligence, plaintiff has incurred significant legal costs in an attempt to minimize and reduce the damage caused by defendant Bailey's wrongful conduct.

104.   As a result of defendant Bailey's deceit and collusion, plaintiff is entitled to treble damages.

105.    As a result of defendant Bailey's negligence and malpractice, plaintiff has

been damaged in the sum of not less than five-hundred thousand dollars

($500,000.00), plus attorneys fees and costs.

## SEVENTH CAUSE OF ACTION

### (Rescission against LaMattina)

106.    Plaintiff hereby re-alleges all foregoing paragraphs and incorporates them by

reference.

107.    As a result of defendant LaMattina's fraud, the deed delivered to defendant

LaMattina on November 2, 2006 by plaintiff should be rescinded.

## EIGHTH CAUSE OF ACTION

### (Declaratory Judgment against LaMattina)

108.    Plaintiff hereby re-alleges all foregoing paragraphs and incorporates them by

reference.

109.    As a result of the aforementioned fraud, plaintiff is entitled to a Decleration

that the deed executed on November 2, 2006, transferring title to LaMattina,

as grantee, be declared void.

**WHEREFORE**, Plaintiff **GUADALUPE BOSCH** demands judgment as follows:

(a)     on the First Cause of Action (violation of RESPA), jointly and

severally against defendants LaMattina, Freedom Mortgage, Schubin,

Young and Bailey, plaintiff is entitled to treble damages in an amount

21

not less than three-hundred-fifty thousand dollars ($350,000.00) and attorney's fees and costs;

(b)     on the Second Cause of Action (fraud), jointly and severally against defendants LaMattina, Schubin, Young and Bailey, plaintiff is entitled to damages to be determined at trial but not less than five-hundred thousand dollars ($500,000.00) and punitive damages in the amount of two-million dollars ($2,000,000.00);

(c)     on the Third Cause of Action (deceptive trade practices), individually against defendants LaMattina, Freedom Mortgage, Schubin, Young and Bailey, plaintiff is entitled to actual and statutory damages in the amount of damages against each defendant, plus attorney's fees and costs;

(d)     on the Fourth Cause of Action (breach of contract) against defendant LaMattina, plaintiff is entitled to damages in an amount to be determined at trial, but not less than five-hundred thousand dollars ($500,000.00);

(e)     on the Fifth Cause of Action (conversion) against defendant LaMattina,  plaintiff is entitled to damages to be determined at trial, but not less than seventy-five thousand dollars ($75,000.00), plus interest;

(f)     on the Sixth Cause of Action (malpractice) against defendant Bailey,

plaintiff is entitled to treble damages in the amount of one-million

five-hundred thousand dollars ($1,500,000.00) plus attorney's fees and

costs;

(g)     on the Seventh Cause of Action (rescission) against defendant

LaMattina, plaintiff is entitled to rescission of the sale of the property

and deed executed on or about November 2, 2006;

(h)     on the Eighth Cause of Action (declaratory judgment) against

defendant LaMattina, plaintiff is entitled to a declaration that the deed

for 105 Barber Street recorded in LaMattina's name, as grantee, is

void;

(i)     and such other and further relief as the Court deems proper, together

with costs of this action.

### Jury Demand

Plaintiff demands a jury trial.

Dated:  New York, New York          Yours, etc.
        January 16, 2008            FLOWER, MEDALIE & MARKOWITZ


                                    By: _____
                                    Donald Markowitz, Esq. (DM - 8320)
                                    *Attorneys for Plaintiff Guadalupe Bosch*
                                    24 East Main Street, Suite 201
                                    Bay Shore, New York 11706
                                    (631) 968-7600

# EXHIBIT A

Tax&Payment Dry - Closing.tpm        From: Fay Fay Lim        11/2/2006 5:48:47 PM  (Page 2 of 3)

HUD - 1 (UNIFORM) SETTLEMENT STATEMENT                    OMB Approval No. 2502-0265

| A. | U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT | | SETTLEMENT STATEMENT |
|---|---|---|---|

| B. | TYPE OF LOAN | | 6. File Number: | 7. Loan Number: 8001000061074827 |
|---|---|---|---|---|
| | 1 □ FHA | 3 □ FmHA | | |
| | 3 □ N Conv. Unins | 4 □ VA  5 □ Conv. Ins | | 8. Mortgage Insurance Case Number |

C.   NOTE: This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown. Items marked "(p.o.c)" were paid outside the closing; they are shown here for informational purposes and are not included in the totals.

NOTE: This is Temporary Identification Number

| D.  NAME AND ADDRESS OF BORROWER DOMENICO LAMATTINA 620 FIFTH STREET WEST BABYLON, NY 11704 | E.  NAME, ADDRESS AND TIN OF SELLER GUADALUPE BOSCH 108 BARBER STREET BRENTWOOD, NY 11717 | F.  NAME AND ADDRESS OF LENDER: FREEDOM MORTGAGE CORPORATION 907 PLEASANT VALLEY AVENUE, SUITE 3 MOUNT LAUREL, NJ 08054 |
|---|---|---|

| G.  PROPERTY LOCATION 108 BARBER STREET BRENTWOOD, NY 11717 | H.  SETTLEMENT AGENT NAME, ADDRESS AND TIN: JOSEPH A. SCHOEN & ASSOCIATES 401 BROADWAY, SUITE 1603, NEW YORK, NY 10013 | |
|---|---|---|
| BLOCK: 02.00, LOT: 071.000 | PLACE OF SETTLEMENT 863 ISLIP AVENUE CENTRAL ISLIP, NY 11722 | I.  SETTLEMENT DATE 11/03/2006 |

| J.  SUMMARY OF BORROWER'S TRANSACTION | | K.  SUMMARY OF SELLER'S TRANSACTION | |
|---|---|---|---|
| 100. GROSS AMOUNT DUE FROM BORROWER: | | 400. GROSS AMOUNT DUE TO SELLER: | |
| 101. Contract sales price | 440,000.00 | 401. Contract sales price | 440,000.00 |
| 102. Personal property | | 402. Personal property | |
| 103. Settlement charges to borrower (Line 1400) | 15,750.33 | 403. | |
| 104. | | 404. | |
| 105. | | 405. | |
| Adjustments for items paid by seller in advance | | Adjustments for items paid by seller in advance | |
| 106. City/town taxes | | 406. City/town taxes | |
| 107. County taxes | | 407. County taxes | |
| 108. Assessments | | 408. Assessments | |
| 109. | | 409. | |
| 110. | | 410. | |
| 111. | | 411. | |
| 112. | | 412. | |
| 120. GROSS AMOUNT DUE FROM BORROWER | 455,750.33 | 420. GROSS AMOUNT DUE TO SELLER | 440,000.00 |
| 200. AMOUNTS PAID BY OR IN BEHALF OF BORROWER: | | 500. REDUCTIONS IN AMOUNT DUE TO SELLER: | |
| 201. Deposit or earnest money | | 501. Excess deposit | |
| 202. Principal amount of new loan(s) | 352,000.00 | 502. Settlement charges to seller (Line 1400) | 2,060.00 |
| 203. Existing loan(s) taken subject to | | 503. Existing loan(s) taken subject to | |
| 204. FREEDOM MTG #8001000061074830 | 88,000.00 | 504. Payoff of first mortgage loan  COUNTRYWIDE H... | 367,129.23 |
| 205. | | 505. Payoff of second mortgage loan | |
| 206. | | 506. | |
| 207. | | 507. | |
| 208. | | 508. | |
| 209. | | 509. | |
| Adjustments for items unpaid by seller | | Adjustments for items unpaid by seller | |
| 210. City/town taxes | | 510. City/town taxes | |
| 211. County taxes | | 511. County taxes | |
| 212. Assessments | | 512. Assessments | |
| 213. WATER/SEWER | | 513. WATER/SEWER | |
| 214. PROPERTY DISCLOSURE CREDIT | | 514. PROPERTY DISCLOSURE CREDIT | |
| 215. | | 515. | |
| 216. | | 516. | |
| 217. | | 517. | |
| 218. | | 518. | |
| 219. | | 519. | |
| 220. TOTAL PAID BY/FOR BORROWER | 440,000.00 | 520. TOTAL REDUCTION AMOUNT DUE SELLER | 371,189.23 |
| 300. CASH AT SETTLEMENT FROM/TO BORROWER: | | 600. CASH AT SETTLEMENT FROM/TO SELLER: | |
| 301. Gross amount due from borrower (Line 120) | 455,750.33 | 601. Gross amount due to seller (Line 420) | 440,000.00 |
| 302. Less amount paid by/for borrower (Line 220) | 440,000.00 | 602. Less reduction in amount due seller (Line 520) | 371,189.23 |
| 303. CASH FROM BORROWER | 15,750.33 | 603. CASH TO SELLER | 68,810.77 |

SELLER'S STATEMENT

The information contained in Blocks E, G, H, and I and on line 401 (or, if line 401 is asterisked, line 403) and also in numbered line 405 is being furnished to the Internal Revenue Service (see Seller Certification). If you are required to file a return, a negligence penalty or other sanction will be imposed on you if this item is required to be reported and the IRS determines that it has not been reported. You are required to provide the Settlement Agent with your correct taxpayer identification number. If you do not provide the Settlement Agent with your correct taxpayer identification number, you may be subject to civil or criminal penalties imposed by law. Under penalties of perjury, I certify that the number shown on this statement is my correct taxpayer identification number.

| (Seller's Signature)   GUADALUPE BOSCH | (Seller's Signature) |
|---|---|

© EASY SOFT, Inc. 2001 Previous editions are obsolete        Page 1        form HUD-1 (3-86) ref Handbook 4305.2

L. SETTLEMENT CHARGES

| | PAID FROM BORROWER'S FUNDS AT SETTLEMENT | PAID FROM SELLER'S FUNDS AT SETTLEMENT |
|---|---|---|
| TOTAL SALES/BROKER's COMMISSION based on price $ 440,000.00 @ | | |
| Division of Commission (line 700) as follows | | |
| | | |
| Commission paid at Settlement | | |
| | | |
| ITEMS PAYABLE IN CONNECTION WITH LOAN | | |
| Loan Origination Fee 0.500% $ NLC OF NYC INC | 1,760.00 | |
| Loan Discount $ | | |
| Appraisal Fee to | | |
| Credit report to | | |
| Lender's Inspection Fee | | |
| PROCESSING FEE TO NLC OF NYC INC | 595.00 | |
| LENDER FEE TO FREEDOM MORTGAGE | | |
| TAX SERVICE FEE | | |
| FLOOD CERTIFICATION FEE | | |
| APPLICATION FEE TO NLC OF NYC INC | 170.00 | |
| | | |
| | | |
| ITEMS REQUIRED BY LENDER TO BE PAID IN ADVANCE | | |
| Interest from 11/03/2006-12/01/2006 @ $69.666 per day | 2,020.33 | |
| Mortgage Insurance Premium for | | |
| Hazard Insurance Premium for 1 year(s) to STATE FARM INS CO-1070 POC | | |
| | | |
| 36 R.E. Taxes | 3499.00 | |
| RESERVES DEPOSITED WITH LENDER | | |
| Hazard Insurance | | |
| Mortgage Insurance | | |
| City Property Taxes | | |
| County Property Taxes | | |
| Annual assessments | | |
| | | |
| | | |
| Aggregate Accounting Adjustment | 0.00 | |
| TITLE CHARGES | | |
| Settlement or closing fee to | 450.00 | |
| Abstract or title search to FAITH ABSTRACT | | |
| Title Examination to | | |
| Title insurance binder to | | |
| Document preparation to | | |
| Notary fees to | | |
| Attorney's fees to JOSEPH A. SCHUBIN, ESQ. | 800.00 | |
| (includes line numbers: | ███████████ | |
| | 23,327. | |
| Title Insurance to STEWART TITLE | ███████████ | |
| (includes line numbers | | |
| Lender's coverage $ 352000.00 + 88000.00 | | |
| Owner's coverage $ 440000.00 | | |
| POLICY ENDORSEMENTS TO STEWART TITLE | 165% | |
| BANKRUPTCY SEARCH TO FAITH ABSTRACT | 75.00 | |
| PATRIOT SEARCH TO FAITH ABSTRACT | 50.00 | |
| GOVERNMENT RECORDING AND TRANSFER CHARGES | | |
| Recording fees: Deed $ 250 Mortgage $ 25c Release $ 90 | 500.00 | 90 |
| City/county tax/stamps: Deed $ 1,760.00 Mortgage $ 2,100.00 | 2/1,25 | 1,760. |
| State tax/stamps: Deed $ Mortgage $ | | |
| 1/4 MORTGAGE TAX BY LENDER - 880.00 (POC) / POWER OF ATTORNEY | | |
| EA5217 FILING FEE | | |
| ADDITIONAL SETTLEMENT CHARGES | | |
| Survey to Faith Abstract | 757.00 | 175.00 |
| Pest Inspection to Title Closer fee to Kathleen Miraglia | | 55.00 |
| OVERNIGHT DELIVERY TO FAITH ABSTRACT | | |
| COURIER FEE TO FEDEX | 50.00 | |
| TRAVEL FEE TO SCHUBIN & ASSOCIATES | 250.00 | |
| Closing Service charge | 50 | |
| TOTAL SETTLEMENT CHARGES (enter on lines 103, Section J and 502, Section K) | 15,750.33 | 2,068.50 |

# CERTIFICATION ADDENDUM TO
# HUD-1 SETTLEMENT STATEMENT

Loan Number: 900100061074827

Property Address:  105 BARBER STREET, BRENTWOOD, NEW YORK 11717

I have carefully reviewed the HUD-1 settlement statement and to the best of my knowledge and belief, it is a true and accurate statement of all receipts and disbursements made on my account or by me in this transaction.  I further certify that I have received a copy of the HUD-1 Settlement Statement.

| | | |
|---|---|---|
| DOMENICO LA MATTINA | Borrower | Seller |
| | Borrower | Seller |
| | Borrower | Seller |
| | Borrower | Seller |
| | Borrower | Seller |
| | Borrower | Seller |

The HUD-1 Settlement Statement which I have prepared is a true and accurate account of this transaction.  I have caused or will cause the funds to be disbursed in accordance with this statement.

Settlement Agent _____ Date _____

**WARNING:**  It is a crime to knowingly make false statements to the United States on this or any other similar form.  Penalties upon conviction can include a fine and imprisonment.  For details see:  Title 18 U.S. Code Section 1001 and Section 1010.

| L. SETTLEMENT CHARGES | | M. DISBURSEMENT TO OTHERS | |
|---|---|---|---|

U.S. Department of Housing and Urban Development

| Transactions without Sellers | | |
|---|---|---|
| Name and Address of Borrower | | Name and Address of Lender |
| DOMENICO LAPARTINA | | FREEDOM MORTGAGE CORPORATION |
| | | 6700 FALLBROOK AVENUE, SUITE 250 |
| 105 BARBER STREET | | WEST HILLS, CA 91307 |
| BRENTWOOD, NY 11717 | | |
| | | Settlement Agent: |
| | | JOSEPH A. SCHUBIN & ASSOCIATES |
| Property Location (if different from above): | | 411 BROADWAY, SUITE 1603, NEW YORK, NY 10013 |
| 105 BARBER STREET | | Place of Settlement: |
| BRENTWOOD, NY 11717 | | 963 ISLIP AVENUE |
| BLOCK: 32.00, LOT: 074.000 | | CENTRAL ISLIP, NY 11722 |
| | | Date of Settlement: 11/03/2006 |
| Loan Number: 0006101930 | | |

| L. SETTLEMENT CHARGES | | M. DISBURSEMENT TO OTHERS | |
|---|---|---|---|
| 800. ITEMS PAYABLE IN CONNECTION WITH LOAN | | 1501. | |
| 801. Loan Origination Fee   $ | | | |
| 802. Loan Discount   $ | | 1502. | |
| 803. Appraisal Fee to | | | |
| 804. Credit report to | | | |
| 805. Inspection Fee | | | |
| 806. Mortgage Insurance Application Fee to | | 1503. | |
| 807. Mortgage Broker Fee | | | |
| 808. PROCESSING FEE TO NLC OF NYC INC | | | |
| 809. LENDER FEE TO FREEDOM MORTGAGE CORPORATION | 295.00 | 1504. | |
| 810. | | | |
| 811. | | | |
| 900. ITEMS REQUIRED BY LENDER TO BE PAID IN ADVANCE | | 1505. | |
| 901. Interest from 11/03/2006 to 12/01/2006 @ $31.753 /day | 920.85 | | |
| 902. Mortgage Insurance Premium for | | 1506. | |
| 903. Hazard Insurance Premium for | | | |
| 904 | | 1507. | |
| 905. | | | |
| 1000. RESERVES DEPOSITED WITH LENDER | | 1508. | |
| 1001. Hazard insurance | | | |
| 1002. Mortgage Insurance | | 1509. | |
| 1003. City Property Taxes | | | |
| 1004. County Property Taxes | | | |
| 1005. Annual assessments | | 1510. | |
| 1006. | | | |
| 1007. | | | |
| 1008. Aggregate Accounting Adjustment | 0.00 | 1511. | |
| 1100. TITLE CHARGES | | | |
| 1101. Settlement or closing fee to | | 1512. | |
| 1102. Abstract or title search to | | | |
| 1103. Title Examination to | | | |
| 1104. Title insurance binder to | | 1513. | |
| 1105. Document preparation to | | | |
| 1106. Notary fee to | | | |
| 1107. Attorney's Fees to JOSEPH A. SCHUBIN, ESQ. | 890.00 | 1514. | |
| (includes above item numbers) | | | |
| 1108. Title Insurance to STEWART TITLE | | 1515. | |
| (includes above item numbers) | | | |
| 1109. Lender's coverage $   88,000.00 | | 1530. | |
| 1110. Owner's coverage $ | | TOTAL DISBURSED | |
| 1111. POLICY ENDORSEMENT TO STEWART TITLE | 75.00 | (enter on line 1603) | |
| 1112. | | | |
| 1113. | | N.  NET SETTLEMENT | |
| 1200. GOVERNMENT RECORDING AND TRANSFER CHARGES | | 1600. Loan Amount | 88,000.00 |
| 1201. Recording Fees: MORTGAGE | 250.00 | | |
| 1202. City/county tax/stamps: | | | |
| 1203. State tax/stamps: | | | |
| 1204. 1/4 MTG TAX BY LENDER - 220.00 POC | | 1601. PLUS Cash/Check from Borrower | |
| 1205. MORTGAGE TAX | 674.00 | | |
| 1300. ADDITIONAL SETTLEMENT CHARGES | | 1602. MINUS Total Settlement Charges (line 1400) | 2,664.85 |
| 1301. Survey to | | | |
| 1302. Pest Inspection to | | 1603. MINUS Total Disbursements to others (line 1520) | |
| 1303. Architectural/engineering services to | | | |
| 1304. Building permit to | | 1604. EQUALS Disbursement to Borrower | 85,335.15 |
| 1305. COURIER FEE TO FEDEX | 50.00 | (after expiration of any applicable rescission period required by law) | |
| 1306. | | | |
| 1307. | | | |
| 1400. TOTAL SETTLEMENT CHARGES (enter on line 1602) | 2,664.85 | | |

The undersigned hereby acknowledges receipt of a completed copy of this document. To the best of my knowledge the HUD-1A or RESPA Settlement Statement is a true and accurate account of the funds which were received and have been or will be disbursed by the undersigned as part of the settlement of this transaction.

Settlement Agent _____SCHUBIN & ASSOCIATES    Borrower    DOMENICO LAPARTINA

Date    11/03/2006    Borrower

Form: HUD-1A ref RESPA (3/93)    © EASY SOFT, Inc. 1999 Previous editions are obsolete

# EXHIBIT B

LOAN NUMBER:      90010006107482      CLOSING DATE:      11/2/2006
                  7/9001000610748
                  30
                                      FUNDING DATE:      11/2/2006

## MORTGAGE DISBURSEMENT SCHEDULE

### FREEDOM MORTGAGE CORPORATION

LENDER:
BORROWER(S):       Domenico La Mattina
SELLER(S):         Guadalupe Bosch
PREMISES:          105 Barber Street
                   Brentwood, NY 11717

LOAN PROCEEDS RECEIVED FOR DISBURSEMENT:              $432,983.82

| CHECK # | FOR | TO WHOM | AMOUNT |
|---------|-----|---------|--------|
| | Pay off | Country Wid | $369,129.23 |
| | Legal Fee | Young & Young | $2500.00 |
| | Legal Fee | TJ Bailey | $2500.00 |
| | Title Fees | Faith Abstracts | $13,102.29 |
| | Escrow | Young & Young | $21000.00 |
| | Title Closer | Kathleen Miraglia | 475 — |
| | | Domenico LaMattina | 24277.30 |

TOTAL DISBURSED (Matches total receipt):             $432,983.82

APPROVED AND ACCEPTED:


BORROWER: Domenico La Mattina          SELLER: Guadalupe Bosch


BORROWER:                              SELLER:

# EXHIBIT C

**8054**

**IOLA-JOSEPH A SCHUBIN AND ASSOCIATES**
401 BROADWAY, ROOM 1603
NEW YORK, NY   10013

1-2/210 50

DATE  4/2/2006

PAY TO THE ORDER OF  *Young and Young*                    $ 2,500.00

*two thousand five hundred and 00/100*                    DOLLARS

**CHASE**
JPMorgan Chase Bank, N.A.
New York, New York 10017
www.Chase.com

FOR  *LaMattina*                          *Nancy Chan*

⑈008054⑈

---

**8055**

**IOLA-JOSEPH A SCHUBIN AND ASSOCIATES**
401 BROADWAY, ROOM 1603
NEW YORK, NY   10013

1-2/210 50

DATE  11/2/2006

PAY TO THE ORDER OF  *TJ Bailey*                    $ 2,500.00

*two thousand five hundred and 00/100*                    DOLLARS

**CHASE**
JPMorgan Chase Bank, N.A.
New York, New York 10017
www.Chase.com

FOR  *LaMattina*                          *Nancy Chan*

⑈008055⑈

---

**8056**

**IOLA-JOSEPH A SCHUBIN AND ASSOCIATES**
401 BROADWAY, ROOM 1603
NEW YORK, NY   10013

1-2/210 50

DATE  11/2/2006

PAY TO THE ORDER OF  *Faith Abstracts*                    $ 13,102.29

*thirteen thousand one hundred two and 29/100*                    DOLLARS

**CHASE**
JPMorgan Chase Bank, N.A.
New York, New York 10017
www.Chase.com

FOR  *LaMattina*                          *Nancy Chan*

⑈008056⑈

**IOLA-JOSEPH A SCHUBIN AND ASSOCIATES**
401 BROADWAY, ROOM 1603
NEW YORK, NY 10013

1-2/210 50

DATE 11/2/2006

PAY TO THE ORDER OF _Young & Young_                                      $ 21,000.00

_twenty one thousand and 00/100_ _____ DOLLARS

**CHASE**
JPMorgan Chase Bank, N.A.
New York, New York 10017
www.Chase.com

FOR _La Mattina_

Nancy Chan                        MP

⑆008057⑆

---

8058

**IOLA-JOSEPH A SCHUBIN AND ASSOCIATES**
401 BROADWAY, ROOM 1603
NEW YORK, NY 10013

1-2/210 50

DATE 11/2/2006

PAY TO THE ORDER OF _Kathleen Miraglia_                                  $ 475.00

_Four hundred seventy five and 00/100_ _____ DOLLARS

**CHASE**
JPMorgan Chase Bank, N.A.
New York, New York 10017
www.Chase.com

FOR _La Mattina_

Nancy Chan                        MP

⑆008058⑆

---

8059

**IOLA-JOSEPH A SCHUBIN AND ASSOCIATES**
401 BROADWAY, ROOM 1603
NEW YORK, NY 10013

1-2/210 50

DATE 11/2/2006

PAY TO THE ORDER OF _Domenico La Mattina_                                $ 24,277.30

_twenty four thousand two hundred seventy seven and 30/100_ DOLLARS

**CHASE**
JPMorgan Chase Bank, N.A.
New York, New York 10017
www.Chase.com

FOR _La Mattina_

Nancy Chan                        MP

⑆008059⑆

**IOLA-JOSEPH A SCHUBIN AND ASSOCIATES**
401 BROADWAY, ROOM 1603
NEW YORK, NY 10013

8060

$\frac{1-2}{210}$ 50

DATE 11/2/2006

PAY
TO THE
ORDER OF  Faith Abstract                    $ 1,020.00

one thousand twenty and 00/100 —————— DOLLARS

**CHASE** ◑
JPMorgan Chase Bank, N.A.
New York, New York 10017
www.Chase.com

FOR La Mattina

Nancy Chan   MP

⑈008060⑈

# EXHIBIT D

