**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
---------------------------------------------------------X
GUADALUPE BOSCH,

                Plaintiff,

        - against -

DOMENICO LAMATTINA;
YOUNG & YOUNG, LLP;
THOMAS J. BAILEY, ESQ.;
JOSEPH A. SCHUBIN &
ASSOCIATES; and FREEDOM MORTGAGE
CORPORATION,

                Defendants.
---------------------------------------------------------X

                       **MEMORANDUM AND ORDER**

                          CV 08-0238 (AKT)

**A. KATHLEEN TOMLINSON, Magistrate Judge:**

**I.**     PRELIMINARY STATEMENT

      Plaintiff Guadalupe Bosch ("Plaintiff" or "Bosch") asserts claims of fraud, breach of

contract, conversion, rescission, and seeks a declaratory judgment against Defendant Domenico

LaMattina ("LaMattina") in connection with the sale of Plaintiff's home (the "Subject Property")

to LaMattina as well as a related option contract. Plaintiff also brings claims against Defendant

Thomas J. Bailey ("Bailey") (together with LaMattina, "Defendants") for deceptive trade

practices under New York State General Business Law § 349 ("Deceptive Practices Act"), fraud,

and legal malpractice. Bailey is the attorney whom Plaintiff alleges represented her at the closing

of the sale of the Subject Property to LaMattina. Defendants now move for summary judgment

on all claims and Plaintiff opposes both motions.[1]

---

[1]     Defendants Young & Young, LLP and Freedom Mortgage Corporation were removed from this action by stipulation [DE 54; DE 85]; all claims against Joseph A Schubin & Associates were dismissed [DE 36].

Having considered the parties' submissions, including the parties' Local Civil Rule 56.1 Statements, as well as the applicable case law. the Court GRANTS in part and DENIES in part Defendants' motions for summary judgment for the reasons that follow.

## II.  BACKGROUND FACTS

The following facts are drawn from Defendant Bailey's Second Amended Rule 56.1 Statement ("Bailey's 56.1 Stmt.") [DE 101], Defendant LaMattina's Amended Rule 56.1 Statement ("LaMattina's 56.1 Stmt.") [DE 108], Plaintiff's 56.1 Counterstatement in Response to Bailey's Second Amended 56.1 Statement ("Pl.'s 56.1 Stmt. (Bailey)") [DE 110]; Plaintiff's 56.1 Counterstatement in response to LaMattina's Amended Rule 56.1 Statement ("Pl.'s 56.1 Stmt. (LaMattina)") [DE 111], and declarations of the parties' counsel with exhibits attached to them, including copies of the parties' deposition transcripts.  Relevant discrepancies in the evidence are noted.  Upon consideration of a motion for summary judgment, the Court construes the facts in the light most favorable to the non-moving party.  *See Capobianco v. New York*, 422 F.3d 47, 50 (2d Cir. 2001).

### A.  Plaintiff Sells Her Home to Defendant LaMattina

Prior to November 2, 2006, plaintiff Guadalupe Bosch owned the home where she resided, located at 105 Barber Street, Brentwood, New York.  Bailey's 56.1 Stmt. ¶ 1; Pl.'s 56.1 Stmt. (Bailey) ¶ 1.  The home was subject to a mortgage held by Countrywide Home Loans. Bailey's 56.1 Stmt. ¶ 2; Pl.'s 56.1 Stmt. (Bailey) ¶ 2.  In or about July 2006, Plaintiff fell behind on her mortgage payments.  Bailey's 56.1 Stmt. ¶ 3; Pl.'s 56.1 Stmt. (Bailey) ¶ 3.  On November 2, 2006, Defendant LaMattina purchased the Subject Property from Plaintiff for $440,000 (the "Closing").  Bailey's 56.1 Stmt. ¶ 4; *see* Pl.'s 56.1 Stmt. (Bailey) ¶ 10; Transcript

of the September 21-22, 2009 Deposition of Guadalupe Bosch("Bosch Tr."), annexed as Exhibits F & G to the Declaration of William T. McCaffery, Esq. ("McCaffery Decl.") [DE 95], at 284:12-285:10. LaMattina was represented by the law firm of Young & Young, LLP in the purchase of the Subject Property. Bailey's 56.1 Stmt. ¶ 5; Pl.'s 56.1 Stmt. (Bailey) ¶ 5. At the time of the Closing, the outstanding mortgage debt Plaintiff owed on the Subject Property was $369,129.23. Bailey's 56.1 Stmt. ¶ 11; Pl.'s 56.1 Stmt. (Bailey) ¶ 11. Plaintiff's mortgage balance of $369,129.23 was satisfied from the proceeds of the sale. Bailey's 56.1 Stmt. ¶ 12; Pl.'s 56.1 Stmt. (Bailey) ¶ 12. However, Plaintiff left the Closing with zero dollars. *see* Complaint ¶ 7. Under the terms of the Closing, LaMattina took out two mortgages on the Subject Property, one for approximately $360,000 and the other for approximately $80,000. *See* Transcript of the September 22, 2009 Deposition of Domenico LaMattina ("LaMattina Tr."), annexed as Exhibit H to the McCaffery Decl., at 19:1-13. LaMattina's monthly mortgage payment, including taxes, was approximately $3,500. Bailey's 56.1 Stmt. ¶ 4; LaMattina Tr. 18:24-19:9.

**B. Plaintiff Signs an Option Contract Allowing Her to Remain in Her Home**

At the Closing, Plaintiff signed a number of documents, including: a contract of sale; a deed; a HUD-1 Settlement Statement; a real estate transfer tax form; a lease; and an option contract. Bailey's 56.1 Stmt. ¶¶ 9-10; *see* Bosch Tr. 77:25-78:1-14, 80-83, 100-104 (discussing Plaintiff's signature on the contract of sale, option contract, lease, deed, and papers signed at the Closing generally). The option contract, drafted by Attorney Bailey, allowed Plaintiff to rent the Subject Property back from LaMattina with an option to buy back the property for $440,000 after two years. Bailey's 56.1 Stmt. ¶ 6; LaMattina's 56.1 Stmt. ¶ 3. Under the terms of the option

contract, Plaintiff was to pay LaMattina a monthly rent of $1,750, or half of LaMattina's monthly mortgage payment, for one year. Bailey's 56.1 Stmt. ¶ 6; Option Contract § 2.2, annexed as Exhibit O to the McCaffery Decl. LaMattina was to receive the remaining $1,750 monthly payment towards the mortgage from an escrow account administered by Young & Young which contained $21,000 in funds from the Closing. Bailey's 56.1 Stmt. ¶ 6; *see* Option Contract § 2.2, annexed as Exhibit O to the McCaffery Decl. After one year and the depletion of the escrow account, Plaintiff would be responsible for paying LaMattina approximately $3,500 in monthly rent to cover the entire mortgage payment.[2] Bailey's 56.1 Stmt. ¶ 6; LaMattina Tr. 50:11-20.

### C. Plaintiff's Understanding of the Transactions at the Closing

Plaintiff does not admit all of the above facts in her 56.1 Statement. However, she does not appear to dispute them either. Rather, Plaintiff asserts that her understanding of the transactions which occurred at the Closing is different from the Defendants'. Plaintiff states that she did not understand when she signed the various documents at the Closing that LaMattina was taking title to her home.[3] Pl.'s 56.1 Stmt. (Bailey) ¶ 4. Nor did she understand any of the material terms contained in the option contract or contract of sale. Pl.'s 56.1 Stmt. (LaMattina) ¶¶ 4-5. According to the Plaintiff, she did not desire to sell her house and she was under the impression that the transaction with LaMattina was a refinancing which would allow title to remain in her name. Pl.'s 56.1 Stmt. (Bailey) ¶ 7. After the Closing, Plaintiff contends she was not informed that she had sold the Subject Property to LaMattina, and she did not understand that

---

[2]     The Option Contract lists this amount as $3,750. Option Contract § 2.4.

[3]     This allegation is not identical to the facts as alleged in the Complaint; however, the Court in determining a Motion for Summary Judgment considers primarily the parties' sworn testimony, and the admissions and denials set forth in the parties' 56.1 Statements.

she would be responsible for sending $1,750 to LaMattina each month for one year. Pl.'s 56.1

Stmt. (Bailey) ¶¶ 6, 8. Nor did she understand that (1) $21,000 was placed in escrow to be

provided to LaMattina in monthly installments of $1,750 for the mortgage and tax payments for

one year, and (2) when the escrow funds were exhausted that she would be required to pay

LaMattina monthly payments of $3,500. Pl.'s 56.1 Stmt. (Bailey) ¶¶ 14-16.

### D. Plaintiff's Legal Representation at the Closing

Plaintiff states that she was represented by Defendant Bailey at the Closing. Pl.'s 56.1

Stmt. (Bailey) ¶ 5. Prior to that time, she had not met Bailey and had had no contact with him.

Pl.'s 56.1 Stmt. (Bailey) ¶ 9. Plaintiff claims that before the Closing, she was not provided with

an opportunity to review the Closing materials and was never made aware by anyone that she was

signing a deed transferring the title of her home to LaMattina. Pl.'s 56.1 Stmt. (Bailey) ¶ 9.

Bailey states that although he attended the Closing and drafted the option contract, there was no

attorney-client relationship between him and the Plaintiff. *See* Transcript of the October 1, 2009

Deposition of Thomas Bailey Dep. ("Bailey Tr."), annexed as Exhibit J to the McCaffery Decl.,

at 14:8-21, 39:7-40:3, 78:3-7.

### E. LaMattina's and Plaintiff's Failures to Make Payments

At some point in time, Plaintiff discontinued rental payments to LaMattina. Bailey's 56.1

Stmt. ¶ 17; *see* Bosch Tr. 110:25-111:3, 256:3-262:10; LaMattina Tr. 56:4-8. Bailey and

LaMattina allege that Plaintiff stopped making payments in or about December 2007. Bailey's

56.1 Stmt. ¶ 17; LaMattina Tr. 56:4-8. Plaintiff does not indicate with specificity when she

discontinued making payments. *See* Bosch Tr. 110:25-111:3. Plaintiff states that she was

advised at the time by her then counsel, Donald Markowitz, not to pay rent because the sale of her home had been fraudulent.  Pl.'s 56.1 Stmt. ¶ 17; *see* Bosch Tr. 261:23-7, 281:18-21.

At some point in time, LaMattina also fell behind on the mortgage and/or real property tax payments.  Plaintiff alleges that LaMattina failed to make mortgage payments on the property and that he never paid any money toward the taxes. *See* Declaration of Christopher J. Cassar in Opp'n to Defendant LaMattina's Mot. for Summ. J. ("Cassar Decl.") ¶¶ 17, 27.  LaMattina states that he paid the mortgages and taxes for approximately three to six months after Plaintiff stopped making the rental payments.  LaMattina Tr. 78:21-79:12.  The facts are clearly disputed as to these issues.

Plaintiff commenced the present litigation on January 16, 2008.  *See* Complaint [DE 1]. In her Complaint, Plaintiff had also asserted violations of the Real Estate Settlement Procedures Act, ("RESPA") 12 U.S.C. § 2601 *et seq.* against Bailey and LaMattina, but these claims were dismissed [DE 103], and only state law claims remain.

On September 20, 2010, a Judgment of Foreclosure and Sale on the Subject Property was entered by the Supreme Court of the State of New York, Suffolk County.  LaMattina's 56.1 Stmt. ¶ 7; *see* Judgment of Foreclosure and Sale, Annexed as Exhibit C to the Declaration of Edward Gould in Supp. of LaMattina's Mot. for Summ. J. ("Gould Decl.") [DE 106].  It is unclear from the parties' submissions whether the Subject Property has been sold or whether anyone currently resides there.

## III.  STANDARD OF REVIEW

Fed. R. Civ. P. 56(a) provides that a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to

judgment as a matter of law." The moving party bears the initial burden of establishing the absence of any genuine issue of material fact. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256 (1986); *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008). To determine whether the moving party has satisfied this burden, the Court is required to view the evidence and all factual inferences arising from that evidence in the light most favorable to the non-moving party. *Doro v. Sheet Metal Workers' Int'l Ass'n,* 498 F.3d 152, 155 (2d Cir. 2007); *Woodman v. WWOR-TV, Inc.*, 411 F.3d 69, 75 (2d Cir. 2005).

Where the movant shows a prima facie entitlement to summary judgment, "the burden shifts to the nonmovant to point to record evidence creating a genuine issue of material fact." *Salahuddin v. Goord*, 467 F.3d 263, 273 (2d Cir. 2006). "[T]he nonmovant cannot rest on allegations in the pleadings and must point to specific evidence in the record to carry its burden on summary judgment." *Id.*; *see McPherson v. N.Y. City Dep't of Educ.*, 457 F.3d 211, 215 n.4 (2d Cir. 2006) ("[S]peculation alone is insufficient to defeat a motion for summary judgment."); *Byrnie v. Town of Cromwell, Bd. of Educ.*, 243 F.3d 93, 101 (2d Cir. 2001) ("Even where facts are disputed, in order to defeat summary judgment, the non-moving party must offer enough evidence to enable a reasonable jury to return a verdict in its favor."). Summary judgment is mandated if the non-moving party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see Dobbs v. Dobbs*, No. 06-CV-6104, 2008 WL 3843528, at *5 (S.D.N.Y. Aug. 14, 2008) ("The Court's goal should be to isolate and dispose of factually unsupported claims.") (internal quotation marks omitted).

## IV.   DISCUSSION

### A.   Jurisdiction

As noted, prior to the filing of Defendants' motions for summary judgment, Plaintiff's RESPA claims under 12 U.S.C. § 2601 *et seq.* were dismissed, and only the state law claims remain.  The RESPA claims provided the basis for this Court's subject matter jurisdiction.  *See* 28 U.S.C. § 1331.  With the dismissal of the only claim providing federal subject matter jurisdiction in this action, the issue arises whether this Court can exercise supplemental jurisdiction over the remaining state law claims.

Under 28 U.S.C. § 1367(a), district courts have supplemental jurisdiction over all claims that are related to claims within the court's original jurisdiction such that they form part of the same "case or controversy" under Article III of the United States Constitution.  28 U.S.C. § 1367(a); *Norwak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1187 (2d Cir. 1996).  A district court may, in its discretion, exercise supplemental jurisdiction over state law claims even where it has dismissed all claims over which it had original jurisdiction, so long as there was first a proper basis for original jurisdiction.  *Id.* at 1187 (citing *Chusing v. Moore*, 970 F.2d 1103, 1106 (2d Cir. 1992); *see Da Silva v. Kinsho Intern. Corp.*, 229 F.3d 358, 361 (2d Cir. 2000).  In determining whether to retain jurisdiction, a court considers factors such as judicial economy, convenience, fairness, and comity.  *Norwak,* 81 F.3d at 1191.  "[I]f the dismissal of the federal claim occurs 'late in the action, after there has been substantial expenditure in time, effort, and money in preparing the dependent claims, knocking them down with a belated rejection of supplemental jurisdiction may not be fair.  Nor is it by any means necessary.'"  *Norwak,* 81 F.3d at 1191-92 (quoting *Purgess v. Sharrock*, 33 F.3d 134, 138 (2d Cir. 1994)).

On its face Plaintiff's Complaint originally claimed a right of action under federal law, namely, RESPA. *See* Complaint ¶¶ 41-48. Further, Plaintiff's state law claims arise out of the same case or controversy as the RESPA claims. Thus, the Court has the discretion to retain jurisdiction over Plaintiff's supplemental state law claims even though it dismissed the RESPA claims. *See, e.g., Norwak,* 81 F.3d at 1191. Here, the Court will retain jurisdiction in the interests of judicial economy, convenience, fairness, and comity. The Court takes into account the fact that all discovery, including several depositions, was completed prior to the dismissal of the RESPA claims. Further, this matter has proceeded to the summary judgment stage. The Court further notes that Defendants never raised the issue of supplemental jurisdiction as a basis for dismissing the state law claims in their motion papers. Declining to exercise supplemental jurisdiction under these circumstances, after there has been substantial expenditure in time, effort, and money, would be unfair and unnecessary. The Court therefore elects to exercise supplemental jurisdiction with respect to Plaintiff's state law claims.

## B. Deficiencies in the Parties' Submissions

The Court notes that the parties' motion papers are procedurally defective on several grounds. The LaMattina motion does not comply with the Local Rules of the Eastern District of New York in that his Rule 56.1 Statement contains very few citations to evidence in the record. Local Rule 56.1(d) provides that "[e]ach statement by the movant or opponent pursuant to Rule 56.1 . . . must be followed by citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56©." Likewise, Federal Rule of Civil Procedure 56© provides that a party asserting that a fact cannot be or is genuinely disputed must support that assertion by:

(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

(B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

LaMattina's Rule 56.1 Statement contains seven paragraphs, many of which are quite lengthy. However, there are only three citations to specific documents to support the proffer being made. In some instances, LaMattina's statement contains sentences styled as allegations and legal argument, i.e., "[t]he action for Rescission and Declaratory Judgment must be summarily dismissed as either moot or academic ..." LaMattina's 56.1 Stmt. ¶ 6.

LaMattina's deficient Rule 56.1 Statement is not the only procedural flaw. Each of the affirmations submitted on behalf of both Plaintiff and Defendants includes legal argument. While Plaintiff filed an attorney declaration in opposition to LaMattina's Motion for Summary Judgment (Cassar Decl.), no memorandum of law was submitted, and the declaration in opposition generally consists of impermissible legal argument. Pursuant to Local Civil Rule 7.1, legal argument is to be set forth in a memorandum of law, while factual affirmations are to be set forth in affidavits. *See Dell's Maraschino Cherries Co., Inc. v. Shoreline Fruit Growers, Inc.*, No. 10-CV-3789, 2012 WL 3537009, at *1 n.3 (E.D.N.Y. Aug. 14, 2012); *Trustees of Local 7 Tile Indus. Welfare Fund v. Bennick Contracting, Inc.*, No. 07-CV-4992, 2010 WL 1424011, at *2 n.3 (E.D.N.Y. Jan. 22, 2010) (noting that legal argument in attorney affirmation was improper). Further, the Cassar Declaration was never filed on ECF and the Court directs Plaintiff's counsel to post his Declaration on ECF immediately. The Declaration of Service

attached to the Cassar Declaration shows that copies were served on opposing counsel. Based on

that asserted proof of service, the Court will consider the information contained in the

Declaration. Finally, to the extent that each of the parties' declarations contain factual

statements, they are not made by any individual with first-hand knowledge of the facts, but rather

by counsel for Plaintiff and Defendants. *See Risco v. McHugh*, – F. Supp. 2d –, 2012 WL

2161115, at *1 n.2 (S.D.N.Y. June 14, 2012) (rejecting attorney affirmation that was not based

on personal knowledge). To the extent that counsel have made factual averments, those portions

of the Declarations will not be considered here.

### C. Claims Against Bailey

Plaintiff's claims of fraud, legal malpractice, and deceptive trade practices under New

York State General Business Law § 349 ("Deceptive Practices Act") are addressed below.

#### 1. Fraud

In order to establish fraud under New York law, Plaintiff must prove: (I) a

misrepresentation or material omission of fact which was false and known to be false; (ii) made

for the purpose of inducing the other party to rely on it; (iii) justifiable reliance of the other party;

and (iv) injury. *Premium Mortg. Corp. v. Equifax, Inc.*, 585 F.3d 103, 108 (2d Cir. 2009)

(quoting *Lama Holding Co. v. Smith Barney Inc.*, 88 N.Y.2d 413, 421 (N.Y. 1996)).

##### a. *Plaintiff's Allegations*

 Plaintiff alleges that Bailey and LaMattina intentionally entered into a scheme to defraud

her out of the equity and ownership of her home. Plaintiff's Memorandum of Law in Opp'n to

Summ. J. Mot. ("Pl.'s Mem.") at 3; *see* Bosch Tr. 209:4-12, 372:12-373:3, 377:7-15, 380:12-18.

Plaintiff states that Bailey did not inform her that the transactions at the Closing would cause her to lose title to her home. Nor did she understand that escrow monies would be paid out to LaMattina to be applied to the mortgage. Pl.'s 56.1 (Bailey) ¶¶ 5, 14. According to the Plaintiff, Bailey adopted a false and fraudulent HUD-1 settlement statement and permitted checks to be written on expenses for which Plaintiff should not have been liable and which she did not agree to pay, thereby contradicting the HUD-1 statement and exhausting Plaintiff's proceeds from the Closing. Pl.'s. Mem. at 4; *see* Bosch Tr. 380:24-384:6. Finally, Plaintiff claims (for the first time in her reply) that the option contract Bailey developed contained false and fraudulent terms since it included an $18,000 "construction credit" for the Subject Property – monies paid to LaMattina even though no construction was performed. Pl.'s Mem. at 5. Plaintiff claims serious financial injury as a result of her reliance on Bailey's misrepresentations, namely, being defrauded of the equity and ownership of her home. Pl.'s Mem. at 5-6; *see* Pl.'s 56.1 (Bailey) ¶ 7, 9-10; *see* Bosch Tr. 209:4-12, 372:12-373:3, 377:7-15, 380:12-18.

### b.   *Defendant Bailey's Arguments*

Bailey advances four arguments in response to Plaintiff's allegations of fraud. Each of these is addressed below.

### (i)   *No Misrepresentations*

Bailey argues that: (I) $21,000 was in fact placed in escrow and $1,750 per month was distributed by Young & Young to LaMattina for the monthly mortgage payments. According to Bailey, then, no misrepresentations were made. Bailey's Memorandum of Law ("Bailey's Mem.") at 4-5; *see* Bailey's 56.1 Stmt. ¶ 14. This argument is unavailing. Although Bailey

points to evidence in the record showing that monthly checks were paid to LaMattina from the escrow account (*see* Copies of Escrow Checks, annexed as Exhibit W to the McCaffery Decl.), the parties dispute whether LaMattina used these funds to pay the mortgages and taxes on the Subject Property.  *See* Section II(E), *supra.*  Further, Plaintiff outlines several other material misrepresentations or omissions made by Bailey in the course of his alleged representation that may serve as the basis for a cognizable fraud claim.  *See* Section IV(C)(1)(a), *supra*.

### *(ii)    Plaintiff's Fraud Claim is Belated and Conclusory*

According to Bailey, Plaintiff's claim that Bailey and LaMattina entered into a scheme to defraud her of the equity in and ownership of her home is insufficient to state a cause of action because that claim was not asserted in Plaintiff's complaint and because it is conclusory. Bailey's Reply Memorandum of Law ("Bailey's Reply Mem.") at 2-4.

Bailey is incorrect in his assertion that Plaintiff did not allege this claim in her Complaint. *See* Complaint ¶¶ 50-57.  Further, Plaintiff's claim is not conclusory.  While a fraud claim must be pleaded with the requisite particularity under N.Y. C.P.L.R. 3016(b), there is certainly no requirement of "unassailable proof" at the pleading stage, rather, the complaint must simply "allege the basic facts to establish the elements of the cause of action." *Pludeman v. Northern Leasing Sys., Inc.*, 10 N.Y.3d 486, 492 (N.Y. 2008).  In *Pludeman*, the court found allegations of fraud sufficient even where plaintiffs did not allege specific details of certain defendants' conduct in their complaint.  *Id.* at 493.  The court noted that "[t]he purpose of section 3016(b)'s pleading requirement is to inform a defendant with respect to the incidents complained of."  *Id.* at 491.  C.P.L.R. 3016(b) is satisfied "when the facts are sufficient to permit a reasonable inference

of the alleged misconduct." *Id.* at 492. In some cases, "less than plainly observable facts may be supplemented by the circumstances surrounding the alleged fraud." *Id.* at 493.

Plaintiff's fraud claim is not conclusory because she alleges the basic facts necessary to establish the elements of the cause of action by outlining several material misrepresentations illustrating how LaMattina and Bailey allegedly entered into a scheme to deprive her of the equity in and ownership of her home. *See* Section IV(C)(1)(a), *supra*. These specific allegations of material misstatements and omissions are not separate and distinct from Plaintiff's claim regarding Bailey and LaMattina's scheme to defraud her, as Bailey claims. Rather, they describe in greater detail how the alleged fraud was perpetrated. Plaintiff has therefore alleged sufficient facts to provide notice of a "reasonable inference" of the misconduct alleged. *See Pludeman*, 10 N.Y.3d at 492.

### (iii)    Plaintiff's Claim Regarding a Fraudulent Construction Credit is Belated and Impermissible

Plaintiff's claim that the option contract contained a "construction credit" is impermissible, Bailey maintains, because it was asserted belatedly in Plaintiff's reply memorandum and not in the Complaint, and because there is no fraud based upon the inclusion of a construction credit in an option agreement. Bailey's Reply Mem. at 4-5. Bailey's argument here is persuasive with regard to the timing of Plaintiff's contention. Because Plaintiff raised this theory for the first time in her reply, the Court will not consider it. *See Mullins v. City of New York*, 653 F.3d 104, 118 n.2 (2d Cir. 2011) (declining to consider argument raised for the first time in a reply brief) (citing *Castro v. Holder*, 597 F.3d 93, 95-96 n.2 (2d Cir. 2010). However, as noted previously, this finding does not end the discussion. Plaintiff has outlined a number of

other material misrepresentations and omissions which may form the basis of a fraud claim. Since the Court is not considering Plaintiff's argument regarding a construction credit in the option contract, the Court need not address Bailey's contention that there is no fraud based upon the inclusion of such credit in the option agreement.

### (iv)    *Plaintiff's Fraud Claim is Duplicative of her Legal Malpractice Claim*

Bailey contends that Plaintiff's fraud claim must be dismissed since it is duplicative of her legal malpractice claim. Bailey Mem. at 5-7. The Court declines to rule on the merits of this defense because there remains an issue of fact as to whether Bailey represented the Plaintiff at the Closing. *See* Pl.'s 56.1 Stmt. (Bailey) ¶ 5; Bailey Tr. 14:4-14, 39:7-40:3; Section II(D), *supra.* Consequently, since this issue is in controversy, Plaintiff's allegations of fraud survive summary judgment.

### 2.    Deceptive Trade Practices

New York General Business Law § 349 ("Deceptive Practices Act") allows for a private cause of action for any person injured by "deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service" in the state of New York. N.Y. GEN. BUS. LAW § 349 (McKinney 2012). To state a claim under § 349, a plaintiff must allege: (1) the act or practice was consumer-oriented; (2) the act or practice was misleading in a material respect; and (3) the plaintiff was injured as a result. *Spagnola v. Chubb Corp.*, 574 F.3d 64, 74 (2d Cir. 2009) (citing *Maurizio v. Goldsmith*, 230 F.3d 518, 521 (2d Cir. 2000)). The Deceptive Practices Act applies "'to virtually all economic activity' that occurs in New York State." *Gotlin*

*ex. rel. County of Richmond v. Lederman*, No. 10-CV-3244, 2012 WL 150624, at *3 (2d Cir. May 1, 2012) (quoting *Goshen v. Mut. Life Ins. Co. of N.Y.*, 98 N.Y.2d 314, 323-24, 746 N.Y.S.2d 858, 744 N.E.2d 1190 (N.Y. 2002)).

### a.   Plaintiff's Allegations

Plaintiff alleges that Bailey's actions during the sale of her home were misleading and caused injury to her, in violation of the Deceptive Practices Act.  Although Plaintiff does not detail these claims in her reply, they are described in her Complaint and include:  misrepresenting to Plaintiff the terms of the agreements and what costs she was obligated to pay; adopting the fraudulent HUD-1 statement; permitting checks to be disbursed from the settlement proceeds contrary to the HUD-1 statement; permitting Plaintiff's funds to be paid to persons not entitled to them; permitting a fraudulent credit to be given to LaMattina towards the purchase price of the Subject Property; and failing to disclose to Plaintiff a conflict of interest between the Defendants. Complaint ¶¶ 65, 67.  Pl.'s Mem. at 7-8.  Plaintiff also alleges that Bailey's practices have had and may continue to have a broad impact on consumers throughout New York because Bailey uses the same option contract with clients in other transactions and does not provide clients advice or explanation.  Pl.'s Mem. at 7.

### b.   Bailey's Arguments

Bailey makes three arguments responding to Plaintiff's allegations of deceptive trade practices, examined below.

### (i) Plaintiff's Allegations of Deceptive Trade Practices are Actually Allegations of Legal Malpractice

Without providing any citations to authority, Bailey argues that Plaintiff's claim that he did not provide her with appropriate advice or explanation is essentially a claim for legal malpractice and not an allegation of deceptive business practices. Bailey Reply Mem. at 8. Because Plaintiff and Bailey dispute whether Bailey represented Plaintiff in the transaction, the Court cannot dismiss the Deceptive Trade Practices claim on these grounds. *See* Section II(D), *supra.*

### (ii) Plaintiff Misconstrues Bailey's Testimony Regarding the Option Contract

Bailey argues that Plaintiff misconstrues his testimony about the construction credit included in the option contract. Bailey's Reply Mem. at 8-9. The inclusion of the construction credit in the option contract is not fraudulent, Bailey asserts, because LaMattina could have used it to make improvements to the Subject Property in the future. Bailey's Reply Mem. at 8-9. Again, Bailey makes assertions that are clearly disputed by the Plaintiff. He also ignores the other allegedly misleading actions Plaintiff claims that a jury could find materially misleading. *See* Section IV(C)(2)(a), *supra.*

### (iii) Bailey's Actions Were Not Consumer Oriented

Finally, Bailey argues that his actions were not directed at consumers at large, as required by the Deceptive Practices Act. This argument is more availing, and requires a detailed review of the facts in the record as well as the law which applies to those facts.

Plaintiff offers no legal authority to support her argument that Bailey's actions were consumer-oriented. On the other hand, Bailey discusses three cases to support the proposition that his actions were not consumer-oriented, namely, *Oswego Laborers' Local 214 Pension Fund*, 85 N.Y.2d 20, 647 N.E.2d 741, 623 N.Y.S.2d 529 (N.Y. 1995); *Lakehill Associates, Inc. v. 6077 Jericho Turnpike Realty Corp.*, 18 A.D.3d 506, 795 N.Y.S.2d 281 (2d Dep't 2005); and *Canario v. Gunn*, 300 A.D.2d 332, 751 N.Y.S.2d 310 (2d Dep't 2002).

In *Lakehill*, a landlord sued a tenant for breach of a lease provision requiring prior written consent to any assignment of the lease under General Business Law § 349. *Lakehill*, 18 A.D.3d 506. The tenant counterclaimed, alleging deceptive practices. *Id.* at 507. The court held that the tenant failed to allege any conduct attributable to the landlord that had potential impact on consumers at large. *Id.* at 508. *Lakehill* is distinguishable from the present matter because here, the Plaintiff does allege conduct which may have potential impact on consumers at large, namely, that Bailey uses the option contract with other clients and misleads them as to its terms. Pl.'s Mem. 7.

Bailey also relies on *Canario* to support the proposition that his transaction with Plaintiff was private in nature, and, therefore, not subject to relief under the Deceptive Practices Act. *Canario*, 751 N.Y.S.2d 310. In *Canario*, a real estate agent advertised that a property of .78 acres in size was in fact 1.5 acres. *Id.* at 311. The buyers of the property alleged deceptive practices. *Id.* The court held that private contract disputes unique to the parties do not fall within the ambit of the statute, and that the misrepresentation of the acreage had the potential to affect only a single real estate transaction involving a single piece of property. *Id.* at 311-12. In reaching this decision, the court noted that "[p]rivate transactions without ramifications for the

18

public at large are not the proper subject of a claim under General Business Law § 349." *Id.* at 311. *Canario* is distinguishable on the facts. There, the real estate agent misled the plaintiff with respect to the size of a particular piece of property. Here, the Plaintiff alleges that Bailey repeatedly uses the option contract with his clients without providing appropriate advice or explanation. Plaintiff further claims that Bailey admitted to using the same contract at least 12 times. Baily Tr. 85:2-15. Unlike *Canario*, Bosch alleges that Bailey uses the contract in his regular dealings with consumers.

Finally, in *Oswego Laborers Local 214*, the third case cited by Bailey, two pension funds alleged deceptive practices against a bank. *Oswego*, 85 N.Y.2d 20. The Plaintiff pension funds claimed the bank did not provide important advice regarding accounts for non-profit customers, thereby causing the pension funds to lose interest on their accounts. *Id.* Although Bailey does not discuss the facts of the case in his submission, the court in *Oswego* found that the bank engaged in consumer-oriented activity where the bank dealt with plaintiffs in the same manner as any customers entering the bank to open a savings account. Among other things, the court found that the bank furnished the plaintiffs with standard documents presented to regular customers who were opening accounts. *Id.* at 26. The account openings were not unique to the parties, were not private in nature, and potentially affected similarly situated customers. *Id.* at 26. Drawing all reasonable inferences in favor of the non-moving party, here the Court finds that these facts are similar to the present case. Like the bank customers, Bailey furnished his clients with the standard form option agreement which was generally the same for all clients. *See* Baily Tr. 85:2-15; 26:19-27:10 (noting that "[t]he overall articles and paragraphs and information relatively stay consistent" in the form option contract). Although in the standard option

agreement certain specific categories of information are filled in by the parties to the transaction, such as the monthly rent to be paid under the agreement (Bailey Tr. 26:19-29:13), the option agreements are not generally unique to the parties, and potentially affect similarly situated customers. *See Oswego*, 85 N.Y.2d at 26.

Despite the fact that the court in *Oswego* found customer-oriented activity, Bailey uses the case to support the proposition that private contract disputes unique to the parties do not fall within the ambit of the Deceptive Practices Act. However, the case that *Oswego* relied on for this proposition, *Genesco Entertainment, a Div. of Lymutt Industries, Inc. v. Koch*, 593 F.Supp. 743 (S.D.N.Y. 1984), involved the rental of Shea Stadium—"not an ordinary or recurring consumer transaction, rather a 'single shot transaction' involving complex arrangements, knowledgeable and experienced parties and large sums of money." *Genesco*, 593 F.Supp. at 752. The court in *Genesco* notes that "the nature of alleged deceptive government practices with respect to such a transaction are different in kind and degree from those that confront the average consumer who requires the protection of a statute against fraudulent practices." *Id.* at 752. Similarly, in *New York University v. Continental Insurance Company, et al.*, 87 N.Y.2d 308, 662 N.E.2d 763 (N.Y. 1995) the court declined to find consumer-oriented conduct where the case involved complex insurance coverage and proof of loss in which each side was knowledgeable and received expert representation and advice. *Id.* at 321. The court distinguished the case from *Oswego*, in which the parties occupied disparate bargaining positions, and noted that the deceptive practices statute was primarily intended to reach "modest" transactions. *Id.* at 321. Viewing the facts in the light most favorable to the Plaintiff, the private transaction at issue in this matter was not a "single shot transaction" involving knowledgeable, complex parties.

Plaintiff here was an average consumer undertaking a "modest" transaction of the type the Deceptive Practices Act was designed to protect. *See Genesco*, 593 F.Supp. at 752. Bailey's motion for summary judgment on this issue is denied.

### 3. Legal Malpractice

To state a claim for legal malpractice under New York law, a plaintiff must allege: (1) the existence of an attorney-client relationship; (2) attorney negligence; (3) which is the proximate cause of a loss; and (4) actual damages. *Lok Prakashan, Ltd. v. Berman*, 349 Fed.Appx. 640, 642 (2d Cir. 2009) (quoting *Achtman v. Kirby, McInerney & Squire, LLP*, 464 F.3d 328, 337 (2d Cir. 2006)). A defendant in a legal malpractice action can succeed on a motion for summary judgment by presenting admissible evidence establishing that the plaintiff is unable to prove at least one of these essential elements. *See, e.g., Velie v. Ellis Law, P.C.*, 48 A.D.3d 674, 854 N.Y.S.2d 137 (2d Dep't 2008).

#### a. Plaintiff's Allegations

Plaintiff alleges that Bailey represented her at the Closing and committed legal malpractice by, in sum, (1) negligently failing to discuss or explain any of the transactions entered into at the Closing and (2) failing to protect Plaintiff from having to pay settlement costs and other fees she was not obligated to pay at the Closing. Pl.'s Mem. 9-10; *see* Pl.'s 56.1 Stmt. (Bailey) ¶ 9, 15; Bosch Tr. 377:7-15, 380:24-6. Bailey's negligence, according to the Plaintiff, caused her to lose equity in and ownership of her home. Pl.'s Mem. 9-10; *see* Bosch Tr. 377:7-15. Since Plaintiff received no money from the sale of the Subject Property, she calculates actual damages to be: (I) $70,870.77 in lost equity, or the difference between the sale price of $440,000 and the pay-off

balance of her mortgage at the time of the Closing; and (ii) $440,000.00, representing the fair

market value of the Subject Property at the time of the Closing.  Pl.'s Resp. to Def.'s Interrogs.

¶ 16.  Plaintiff's allegations satisfy all of the elements for a legal malpractice claim.  *See Lok*

*Prakashan, Ltd.*, 349 Fed. Appx. at 642.

### b.    Bailey's Argument

Although Bailey denies having represented Plaintiff at any time (Bailey Tr. 39:7-40:3,

78:3-7), he does not raise this defense in his motion papers, arguing only that Plaintiff sustained

no damages as a result of Bailey's alleged representation.  If Bailey establishes that Plaintiff

cannot prove damages, he prevails on his motion.  *See, Velie*, 854 N.Y.S.2d 137.

Bailey claims that Plaintiff received the benefit of various payoffs at the Closing, totaling

$2,060,[4] and that the $21,000 escrow payments were also used for her benefit.  Bailey's 56.1

Stmt. ¶ 15; Bailey Mem. at 11-12.  Subtracting these payments (i.e., $23,060) from Plaintiff's

$70,870.77 lost equity calculation, Bailey concludes that Plaintiff has sustained damages of only

$47,810.77.  Bailey Mem. at 11-12.  Bailey then asserts that Plaintiff has received benefits

outweighing these monetary damages because she "continues to reside at the Subject Property

rent free, mortgage free, tax free, and expense free," paying no rent or "associated living

expenses for the past three and a half years (and counting), as of the writing of this motion ..."

Bailey Mem. at 12.  According to Bailey, Plaintiff's savings on rent and associated costs total

$147,000,[5] a number far greater than the damages she asserts.  Bailey Mem. at 12.

---

[4]       These include $1,760 for transfer taxes, a $175 title closer fee, a $90 recording fee, and a $35 delivery fee.
Bailey Mem. at 11-12; Bailey's 56.1 Stmt. ¶ 15.

[5]       Although Bailey does not explain this number, he calculates Plaintiff's monthly rental payments at $3,500
per month for 18 months.  In Bailey's Reply Memorandum he lists this figure as "over $150,000" in savings, without

Although Plaintiff does not specifically address Bailey's arguments regarding damages, those arguments are nonetheless unavailing. As a general matter, Plaintiff alleges that she did not understand that title to the Subject Property was transferred to LaMattina and that she did not desire to sell her house (Pl.'s 56.1 Stmt. (Bailey) ¶ 7). Should a jury find these allegations to be true, any Closing costs or mortgage payments made on Plaintiff's behalf could not be considered to be for her benefit. Further, Bailey's calculations of the monetary benefits offsetting Plaintiff's damages are based on allegations which Plaintiff disputes. Plaintiff alleges damages of over $500,000 – $70,870.77 in equity and $440,000 in market value – not just the equity amount of $70,870.77 Bailey uses in his calculations. Also, the parties dispute whether Plaintiff received the benefit of the Closing fees paid on her behalf and the $21,000 in escrow. While the record shows that Young & Young distributed monthly escrow checks to LaMattina for the taxes and mortgage payments, the facts are still in dispute as to whether LaMattina made these payments and for how long. *See* Section II(E), *supra*.

Bailey cites only one case to support his proposition that because Plaintiff resided in the Subject Property rent free, she gained more from the transaction than she claims to have lost. *See Vlahakis v. Mendelson & Associates*, 54 A.D.3d 670, 863 N.Y.S2d 479 (2d Dep't 2008). Bailey's reliance on *Vlahakis* is misplaced. In *Vlahakis*, the plaintiff sued the attorneys who represented him in a bankruptcy proceeding for malpractice where they incorrectly advised him that he would not be required to pay the arrears owed on his mortgage. *Vlahakis*, 54 A.D.3d at 670-71. However, due to the same attorneys' efforts, the plaintiff was able to reside in his home for seven years without paying mortgage, taxes, or insurance. *Id.* at 671. During that time, the

---

explanation. Bailey Reply Mem. At 11.

value of plaintiff's house increased significantly. *Id.* In granting summary judgment for the attorneys, the court found that the plaintiff failed to raise an issue of fact as to whether the sum plaintiff paid the bank because of the attorneys' mistake exceeded his total gains. *Id.* at 671.

Here, unlike in *Vlahakis*, the facts are in dispute as to whether Plaintiff benefitted more from the transaction than she claims to have lost. The plaintiff in *Vlahakis* maintained title to his home while he remained there, benefitting from the gains in home value over time. *Id.* at 671. These gains came as a result of his attorneys' efforts on his behalf during the bankruptcy proceeding. *Id.* at 671. Here, Plaintiff claims she had no desire to sell her home. Even though the transaction allowed her to remain in her home for some time, she unwillingly lost title to it. Whether she would have otherwise maintained title and remained in the Subject Property is a disputed issue between the parties. *See* Pl.'s Tr. 371:8-376:4. Therefore, Bailey has not met his burden as to this claim and summary judgment is precluded.

### D. Claims Against LaMattina

Plaintiff's claims of fraud, breach of contract, conversion, and rescission against LaMattina and her request for declaratory judgment are examined below. As noted, Plaintiff did not submit a reply memorandum with respect to LaMattina's motion; rather, Plaintiff's legal argument is incorporated into the attorney declaration submitted on her behalf. *See* Cassar Decl. Likewise, the Gould Declaration in support of LaMattina's motion also includes legal argument. *See* Gould Decl. The Court refers to these declarations where necessary.

#### 1. Fraud

As outlined in Section IV(C)(1), *supra*, to prove fraud against LaMattina, Plaintiff must prove: (I) a misrepresentation or material omission of fact which was false and known to be

false; (ii) made for the purpose of inducing the other party to rely on it; (iii) justifiable reliance of the other party; and (iv) injury. *Premium Mortg. Corp. v. Equifax, Inc.*, 585 F.3d 103, 108 (2d Cir. 2009) (quoting *Lama Holding Co. v. Smith Barney Inc.*, 88 N.Y.2d 413, 421 (N.Y. 1996)).

Plaintiff alleges that LaMattina misrepresented to her that he was a mortgage broker who was going to help her save her home, omitting that he would take title to the Subject Property. *See* Bosch Tr. 54:14-55:4; Cassar Decl. ¶ 7. LaMattina knew the representation was false, Plaintiff argues, and made the representation for the purpose of inducing Plaintiff to sign the contract documents at the Closing. *See* Cassar Decl. ¶ 26. Plaintiff relied on LaMattina's misrepresentation, and was deprived of the ownership of her home and the equity in it. *See* Bosch Tr. 209:4-12, 372:12-373:3, 377:7-15, 380:12-18; Cassar Decl. ¶ 26.

LaMattina maintains that the Plaintiff knew and understood the material terms of the contract of sale and option contract, and that because Bailey prepared the option contract and provided it to Plaintiff, the cause of action for fraud must be dismissed. Gould Decl. ¶ 5; LaMattina Mem. ¶ 2. Given the fact that Plaintiff disputes her understanding of the transactions at the Closing and related documents (Section II©, *supra*), LaMattina has not met his initial burden to establish the absence of any genuine issue of material fact on this claim.

### 2. Breach of Contract

In order to state a claim of breach of contract, Plaintiff must show: (I) the formation of a contract between the parties; (ii) performance by the plaintiff; (iii) failure of defendant to perform; and (iv) damages. *Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*, 375 F.3d 168, 177 (2d Cir.2004). Plaintiff alleges that LaMattina breached both the contract for the sale of the Subject Property and the option contract. Cassar Decl. ¶¶ 34-35.

25

### a. *Breach of the Contract of Sale*

According to the Plaintiff, LaMattina breached the contract of sale by wrongfully taking Plaintiff's equity from the sale of her home for his own benefit. Cassar Decl. ¶ 34; *see* Bosch Tr. 209:4-12. The Contract of Sale is in the record, signed by Plaintiff and LaMattina. *See* Contract of Sale, annexed as Exhibit N to the McCaffery Decl. Although Plaintiff does not discuss her own performance regarding the Contract of Sale, LaMattina does not allege non-performance. Plaintiff states that she unknowingly and wrongfully paid $2,500 for LaMattina's attorney's fees, $13,102.29 to the title company, $425.00 to the title closer, $21,000 to Young & Young to be held in escrow, and $24,277.30 to LaMattina himself. *See* Bosch Decl. 380:24-384:6. Copies of these checks are in the record (*see* Ex. V to the McCaffery Decl.). LaMattina admits receiving the check for $24,277.30. LaMattina Tr. 35:5-8. Plaintiff argues that these expenses were wrongfully paid from Plaintiff's equity in the Subject Property and constitute a breach of the Contract of Sale. *See* Cassar Decl. ¶¶ 14, 34; Bosch Decl. 380:24-384:6.[6]

LaMattina claims that Plaintiff understood the Contract of Sale as well as the disbursements being paid out and that the Mortgage Disbursement Schedule (Ex. V. to the McCaffery Decl.), signed by the Plaintiff, clearly itemizes the amount of each disbursement as to its recipient. Gould Decl. ¶ 5. Plaintiff's understanding of the Contract of Sale and disbursement schedule is clearly an issue of fact to be determined by the jury. Therefore, LaMattina's motion for summary judgment fails with respect to this issue.

---

[6] Although not highlighted by the Plaintiff, the Contract of Sale states that "[a]ll expenses of every nature whatsoever (including, but not limited to, points, fees, Closing costs) incurred to be paid for the procurement of the mortgage shall be solely for the Purchaser's account, and shall not be borne by the Seller in any manner." Rider to Contract of Sale ¶ 33(c), Ex. N to Mcaffery Decl.

### b.    Breach of the Option Contract

Plaintiff further alleges that LaMattina breached the option contract by failing to pay the real property taxes and the mortgages on the Subject Property.  Cassar Decl. ¶ 35.  The facts are in dispute as to how long Plaintiff continued to make her rental payments under the option contract, and whether, or for how long, LaMattina paid the mortgages and taxes.  *See* Section II(E), *supra.*  These factual issues will determine liability under the contract and must be decided by the jury.  Therefore LaMattina's motion for summary judgment is precluded on this claim.

### 3.    Conversion

"According to New York law, '[c]onversion is the unauthorized assumption and exercise of the right of ownership over goods belonging to another to the exclusion of the owner's rights.'" *Thyroff v. Nationwide Mut. Ins. Co. (Thyroff I),* 460 F.3d 400, 403-04 (2d Cir. 2006) (quoting *Vigilant Ins. Co. of Am. v. Hous. Auth. of El Paso,* 87 N.Y.2d 36, 637 N.Y.S.2d 342, 660 N.E.2d 1121, 1126 (1995)) (alterations in original).  "[T]o recover damages for conversion, a plaintiff must show legal ownership or an immediate superior right of possession to a specific identifiable thing and must show that the defendant exercised an unauthorized dominion over the thing in question to the exclusion of the plaintiff's rights." *Law Offices of K.C. Okoli, P.C. v. BNB Bank, N.A.*, 11-CV-904, 2012 WL 1605829, at *4 (2d Cir May 09, 2012) (quoting *Nat'l Ctr. for Crisis Mgmt., Inc. v. Lerner,* 91 A.D.3d 920, 920, 983 N.Y.S.2d 138 (2d Dep't 2012)).  "Where the original possession is lawful, a conversion does not occur until the defendant refuses to return the property after demand or until he sooner disposes of the property." *Thryoff v. Nationwide Mut. Ins. Co.*, 360 Fed.Appx. 179, 180 (2d Cir. 2010) (quoting *Seanto Exports v.*

*United Arab Agencies*, 137 F.Supp.2d 445, 451 (S.D.N.Y. 2001) (internal quotation marks omitted)).

Here, Plaintiff claims that LaMattina assumed ownership of her equity in the Subject Property without her authorization, including the $24,277.30 check paid to LaMattina at the Closing. Bosch 56.1 Stmt. (LaMattina) ¶ 2-3; Bosch Tr. 209:4-12, 377:7-15, 380:12-18. Cassar Decl. ¶¶ 37-39. Plaintiff also alleges that she paid LaMattina monthly rental payments of $1,750.00, per the option agreement, to be used for the mortgage payments, but that LaMattina disposed of the money for his own benefit. Cassar Decl. ¶¶ 37-39.[7]

LaMattina's only argument with respect to Plaintiff's claim for conversion is that the monies distributed to LaMattina were to pay "points" to the mortgage broker and to set aside reserve funds should Plaintiff default on the loan. LaMattina, however cites no case law or references in the record to support this contention. LaMattina Mem. ¶ 4. This conclusory assertion falls far short of the evidence needed to sustain a finding on this claim.

### 4. Rescission and Declaratory Judgment

Plaintiff claims that as a result of LaMattina's fraud, the deed delivered to LaMattina should be rescinded and that Plaintiff is entitled to a declaratory judgment that the deed transferring title to LaMattina is void. Compl. ¶¶ 106-109. LaMattina asserts that these claims must be dismissed as either moot or academic due to entry of the Judgment of Foreclosure and Sale of the Subject Property. Gould Decl. ¶ 6. LaMattina offers no authority to support his proposition and Plaintiff does not address these arguments in her reply.

---

[7] Plaintiff alleges in her complaint that LaMattina also used the $21,000 in escrow monies for his own benefit (Compl. ¶¶ 78-86), but does not raise this issue in her reply.

When "the parties lack a legally cognizable interest in the outcome" of a case, it is moot and the federal courts lack jurisdiction. *Muhammad v. City of New York Dept. of Corrections*, 126 F.3d 119, 122-23 (2d Cir. 1997) (quoting *County of Los Angeles v. Davis*, 440 U.S. 625, 631, 99 S.Ct. 1379, 1383, (1979)). The mootness doctrine ensures that the parties' interest in the outcome of the case continues to exist throughout the life of the lawsuit. *Muhammad*, 126 F.3d at 123 (citing *Cook v. Colgate University*, 992 F.2d 17, 19 (2d Cir. 1993)). A case that is 'live' at the outset may become moot "when it becomes impossible for the courts, through the exercise of their remedial powers, to do anything to redress the injury.'" *Lumbermens Mut. Cas. Co. v. RGIS Inventory Specialists, LLC*, 356 Fed.Appx. 452, 454 (2d Cir. 2009) (quoting *Alexander v. Yale*, 631 F.2d 178, 183 (2d Cir.1980)). In other words, a plaintiff's claims are moot where the plaintiff can no longer benefit from the relief sought in the complaint. *See, e.g., Fox v. Board of Trustees,* 42 F.3d 135, 140 (2d Cir. 1994), cert denied, 515 U.S. 1169, 115 S.Ct. 2634, 132 L.Ed.2d 873 (1995).

Here, LaMattina has submitted evidence of an entry of Judgment of Foreclosure and Sale of the Subject Property by the Supreme Court, Suffolk County, entered on September 20, 2012. Gould Decl., Ex. C. Plaintiff does not challenge this evidence or even address LaMattina's arguments. A rescission or declaratory judgment by the Court on a property that has already been foreclosed upon and sold would do nothing to address Plaintiff's injuries. As Plaintiff does not offer any evidence to dispute that the house has been foreclosed upon and sold, summary judgment is granted in LaMattina's favor with respect to these claims.

**V.** <u>C<span>ONCLUSION</span></u>

For the reasons set forth above, the Defendants' motion for summary judgment is

GRANTED in part and DENIED in part.

SO ORDERED.

Dated:       Central Islip, New York
              September 28, 2012

           /s/ A. Kathleen Tomlinson
           A. KATHLEEN TOMLINSON
           U.S. Magistrate Judge